IN THE UNITED STATES FEDERAL DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BETTYE PEIGE WILLIS-ROSE §<br>and §<br>MICHAEL J. ROSE §<br>§<br>vs. §.<br>§<br>ASHCAR INC., §<br>ROBBIE ASHCAR, INDIVIDUALLY, §<br>SELECT LUXURY CARS §<br>LLC, § | 7:20cv64 |

## ORIGINAL COMPLAINT

**COMES NOW** the Plaintiffs, by Counsel, and in support of their cause of action state as follows:

## PARTIES

1. The Plaintiffs are residents of the Commonwealth of Virginia and reside in the City of Roanoke, Virginia.

2. Defendant Ashcar Inc. "Ashcar" is a corporation domiciled in the State of Georgia with its principal place of business located in Marietta, Georgia.

3. Defendant Robbie Ashcar is an individual residing in the State of Georgia whose residence is located in the city of Marietta, Georgia.

4. Defendant Select Luxury Cars LLC ("Select Luxury") is a limited liability corporation domiciled in the State of Georgia with its principal place of business in Marietta, Georgia.

1

## JURISDICTION AND VENUE

1. The Court has jurisdiction by virtue of diversity of citizenship pursuant to 28 U.S.C §1332, et. seq.  The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C §1367.  The Court also has specific personal jurisdiction over Plaintiff's state law claims: Plaintiff's claims are governed  by the Virginia long-arm statute, Va Code § 8.01-328.1(A)(1)&(2) and (C), as the cause of action arises from Defendants' transacting business in the Commonwealth of Virginia. Defendants, as a result of the business transactions enumerated below, should have reasonably anticipated this cause of action filed in this Court.  *Universal Leather, LLC v. Koro A.R.S.A., 773 f.3d553,559 (4th Cir. 2012).*

## FACTS

1. Prior to June 15, 2019  Select Luxury offered for sale on its internet website site a  2014 Aston Martin Vanquish Volante. According to its website,  Select claims to sell cars "world wide" and engages in a regular business practice of shipping inventory overseas and throughout the United States.

2. After reviewing Select's posted offering, Plaintiffs' inquired via email as to the availability, price and, particularly,  the condition, of the Aston Martin. Plaintiffs provided their contact information.

3.  Select and Ashcar representatives contacted Plaintiffs in Virginia with details concerning the Aston Martin.  Defendants,  through their representatives, engaged in sales promotion efforts with Plaintiffs in Virginia, extolling the excellent condition of the Aston Martin and explaining the logistics of and their ability to ship the Aston Martin to Virginia.

4. Plaintiffs and the defendants knew and were aware that the Aston Martin Vanquish Volante is a premium luxury car with a body made primarily of carbon fiber. Replacement parts for the body of this particular model of Aston Martin are made entirely by hand in the United Kingdom. All parties knew and understood prior to Plaintiffs' purchase that the nature of carbon fiber upon even minor impact is to shatter. Thus, any damage to the Aston Martin resulting from even a minor impact would drastically reduce the value of the vehicle and require an exorbitant cost to repair.

5. Repeatedly, and prior to sale, Plaintiffs inquired of Ashcar, Robbie Ashcar, and Select Luxury, through their various agents, representatives and employees, as to the condition of the Vanquish Volante. Plaintiffs specifically asked each defendant whether there had been any reported damage to the Aston Martin. Defendants stated that the Aston Martin had not been involved in any accidents. Plaintiffs advised Defendants that as a condition of sale Plaintiffs would not purchase the vehicle if it had been involved in any accidents or collisions, due to the unique characteristics of the Volante and its high value as a luxury sports car. Plaintiffs' inquiries and Defendants' representations that there were no accidents or history of accidents were made via email and telephone conversations to Plaintiffs. The statements were made to Plaintiffs when they were in Virginia.

6. Plaintiffs informed Ashcar, Robbie Ashcar and Select Luxury of the conditions of sale, and each Defendant, individually and jointly, through their agents, representatives and employees assured the Plaintiffs that the Vanquish Volante "had a clean car fax" that the vehicle was "hand picked", the "cream of the crop" and each defendant affirmatively stated, jointly and severally, that the Aston Martin had never been in any accident or sustained any damage from a collision, and had no history of any accident or sustained damage. Defendants Ashcar and Select Luxury further affirmatively stated that the accident history of the Aston Martin had been researched and there were no accidents or collisions reported. Defendant Select Luxury provided a "Carfax" report showing that the Aston Martin had not been damaged.

7. Based upon the Defendants representations, Plaintiffs agreed to purchase the Aston Martin. On June 15, 2019 Defendant Select Luxury prepared and sent, via email, a bill of sale to Plaintiffs in Virginia. The bill of sale was accepted by Plaintiff Michael J. Rose in Virginia on June 15, 2019.

8. On June 17, 2019, Plaintiffs wired the purchase price of 121,660.00 from their bank in Roanoke to Ashcar Inc.'s account in Marietta, Georgia.

9. The same day that Select received the wire transfer from Virginia, Select sent an undated form letter and a second, amended Bill of Sale dated June 17, 2019 to the Plaintiffs in Roanoke, Virginia.

10. The Defendants assisted Plaintiffs with shipping the Aston Martin to Virginia and recommended two or three transport carriers that were routinely used by Select Luxury for vehicle transport services.

11. Defendants released the Aston Martin to the Plaintiffs in Virginia on or about June 20, 2019.

12. Defendants delivered the original Title documents dated August 8, 2019 to the Plaintiffs in Virginia on or about August 20, 2019.

13. On or about August 18, 2019, Plaintiff became aware through "AutoCheck", a vehicle history reporting service similar to Carfax, that the Aston Martin had been involved in an accident on March 23, 2016 in the Commonwealth of Virginia. This information was obtained by plaintiffs independently and was not provided by defendants. Defendants, however, had a license to use AutoCheck to determine vehicle history and at all relevant times prior to and after the sale had access to the AutoCheck data bases.

14. Further, Defendants had actual and/or constructive knowledge of the Aston Martin's accident history. Defendants had access to the AutoCheck data base through a "condition report" generat-

ed by Mannheim auto auction, the automobile wholesaler who sold the Aston Martin to the defendants. The condition report is an electronic document (the defendants purchased the Aston Martin at an auto auction online) and contains a weblink to AutoCheck. The condition report also contains a reference to "9 historical events" which took place regarding the Aston Martin. These historical events include the prior vehicle accident on March 23, 2016. Defendants failed to disclose this information to Plaintiffs and intentionally chose to conceal the AutoCheck information.

15. Upon learning that the Aston Martin had sustained reported damage, Plaintiffs notified the Defendants and revoked acceptance of the Aston Martin. The damage reported by AutoCheck revealed that the Aston Martin had sustained damage on March 23, 2016 in Virginia. Thus, the damage constituted a non-conformity of the standard or condition of the Aston Martin to which Plaintiffs and Defendants had agreed upon prior to purchase. The damage reported by AutoCheck substantially reduced the value of the Aston Martin. The true value of the Aston Martin is $90,000.00 or less.

16. The reported damage to the Aston Martin is not visible on the vehicle itself and can not be detected by a casual observer. Consequently, Plaintiffs acceptance of the Aston Martin was reasonably induced by the difficulty of Plaintiffs discovering the damage. Moreover, Plaintiff's failure to disclose the defect was induced by the Defendants' repeated, complete assurances to the Plaintiffs that the Aston Martin was perfect and without any history of damage.

17. On or about August 18, 2019, Plaintiffs' revoked their acceptance of the Aston Martin. The revocation was made within a reasonable time, having been made prior to Plaintiffs' receipt of the original signed title documents, supplemental title re-assignment and signed bill of sale from Select Luxury. Defendants have refused the return of the Plaintiffs' purchase money and have refused to accept transport of the Aston Martin from Virginia to Georgia.

18. The Aston Martin is currently located in Virginia and has not been titled by the Plaintiffs. Since the time of Plaintiff's revocation of their acceptance, Plaintiffs have incurred additional expenses for storage and insurance for the Aston Martin. Plaintiffs have incurred further financial cost in purchasing a comparable vehicle. The Plaintiffs do not drive the Aston Martin for personal or business use. The Aston Martin is operated only as needed to preserve the mechanical quality of the vehicle and prevent further deterioration. Defendants have acknowledged Plaintiffs revocation.

## COUNT I - REVOCATION OF ACCEPTANCE- UCC (VA. CODE §8.2-608)

COME NOW the Plaintiffs and hereby incorporate paragraphs 1-18 as set forth in the FACTS section of this complaint and in asserting Count I against all defendants further state as follows:

19. Pursuant to Virginia Code §8.2-608, Plaintiffs revoked their acceptance of the purchase agreement upon discovering that the Aston Martin's reported damage did not conform to the condition represented by the Defendants; namely, that the Aston Martin had not been damaged.

20. The nonconformity of the Aston Martin substantially impairs the value of the Aston Martin to the Plaintiffs. The Aston Martin's actual value as a damaged vehicle is $90,000.00 or less. The 121,660.00 purchase price paid by the Plaintiffs was the fair market value of a used Aston Martin without damages. The diminished value of more than $30,000.00 cannot be restored.

21. The plaintiffs revoked their acceptance prior to receiving the original title to the Aston Martin and the authentic title documents, and therefore the amount of time which had elapsed prior to Plaintiff's revocation was reasonable.

22. Plaintiffs have assumed the status of bailee of the Aston Martin. The vehicle is in storage and driven only to prevent mechanical deterioration.

23. The Plaintiffs have incurred damages in the amount of $30,000.00, the estimated diminution in market value. In addition, Plaintiffs have incurred expenses in seeking to revoke their acceptance of the Aston Martin and such additional expenses are ongoing, including, but not limited to, shipping and transport costs, sales tax, court costs and attorney's fees.

24. In the form of alternative relief, Plaintiffs seek that the Court return the parties to the *status quo ante*, returning to Plaintiff the purchase price of the Aston Martin plus Plaintiff's out of pocket expenses related to the revocation of acceptance.

WHEREFORE, PLAINTIFFS demand judgment against the Defendants Select Luxury and Ashcar for its cause of action in an amount sufficient to compensate Plaintiffs for the injuries sustained and identified herein as well as pre-and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

## COUNT II  VIRGINIA CONSUMER PROTECTION ACT

COME NOW the Plaintiffs and hereby incorporate paragraphs 1-18 as set forth in the FACTS section of this complaint and further state as follows:

19. Defendants are liable to the plaintiffs under the Virginia Consumer Protection Act ("VCPA"). The defendants, acting as a "supplier" in a "consumer transaction" have committed fraudulent and deceptive acts in connection with the sale of the Aston Martin (a consumer transaction) which has caused harm to plaintiffs, who are "persons" as defined by the VCPA.

20. The defendants misrepresented the accident history of the Aston Martin. Had the true history been made known to the plaintiffs prior to sale, Plaintiffs would not have purchased the vehicle.

21. By misrepresenting the condition and the accident history of the Aston Martin, particularly when defendants were in a superior position of knowledge regarding the Aston Martin, such conduct is a violation of the VCPA.

22. The defendants violated Va.Code § 59.1-196 et.seq., including individual actions conducted pursuant Va. Code §204, and specifically Va. Code §200.5(5), (6), (7) and (14); by:

    a. Misrepresenting the quality or characteristics of the Aston Martin; namely the accident history previously reported in the "Auto Check" report;

    b. Misrepresenting the particular standard and grade of the Aston Martin as being accident-free, and representing that the Aston Martin was "handpicked" and one of only a small minority of cars meeting Select Luxury's exacting and particular standards and;

    c. Advertising or offering for sale goods which are defective, damaged or deteriorated without disclosing such condition, namely, offering the Aston Martin for sale in a defective and damaged condition without disclosing the defect or damage;

    e. Offering for sale the Aston Martin under fraud and/or false pretense; namely, offering to sell the Aston Martin as a used, undamaged car when Defendants knew or should have known that the Aston Martin was involved in an accident and had been damaged, the having a much lower market value than the purchase price paid by the Plaintiffs.

23. The conduct of the Defendants as described in this complaint was committed knowingly and intentionally. The Defendants, jointly and severally, were aware, at the time the conduct was committed, aware of the falsity, deception, and unfairness of the actions of which the Plaintiffs complain.

24. The Defendants falsely represented that the Aston Martin was handpicked and subject to a selective screening process engaged in by the Defendants for their luxury cars. In fact, Defendants in fact took no such action: the Aston Martin was purchased sight unseen at an auto auction in Pennsylvania without regard to any hand-picked screening process. In fact, Defendants admit they buy most of their cars at auto auctions.

25. As a direct result of the Defendants' knowing and intentional misconduct, plaintiffs suffered mental anguish, in addition to economic loss which has continued and is ongoing.

26. The Defendants have not only caused loss to Plaintiffs as a result of their deceptive acts, Defendants have unduly profited from the sale of an Aston Martin in a "pristine" condition by realizing a much higher sale price than the fair market value of the Aston Martin in its actual, damaged condition.

27. Pursuant to Va. Code § 59.1-204, plaintiffs claim damages from all named defendants. Further, because the Defendants' violations were willful, wanton and committed with reckless disregard for the effect of such conduct on the plaintiffs and consuming public in general, Plaintiffs claim up to three times their actual damages, plus reasonable attorney's fees and court costs.

WHEREFORE, Plaintiffs demand judgment against the Defendants for their cause of action in an ad damnum of 1,000,000.00, and in an amount sufficient to compensate Plaintiffs for the injuries sustained and identified herein as well as pre- and post-judgment interest, court costs, attorneys fees, and any other damages as this Court may find to be just and appropriate, and as provided by law.

### COUNT III- FRAUD

COME NOW the Plaintiffs and hereby incorporate paragraphs 1-18 as set forth in the FACTS section of this complaint and further state as follows:

19. At the time the Defendants had purchased the Aston Martin at auction, Defendants had access to an electronic Mannheim condition report which contained an electronic link to the "AutoCheck" database. The Mannheim condition report is not available to the general public, it is prepared as a buying guide used exclusively by licensed automobile dealers.

20. Defendants claims to "handpick" and "expertly screen" its inventory, which consists of only 10% of the cars available to Defendants for purchase. Moreover, Defendants represented to Plaintiffs and to the general public that it acquires cars from other dealers that were taken in on

9

trade because other dealers don't want to sell those cars which are a competing brand with their dealership franchise, representing that those cars are above higher quality than cars bought at auto auction.

21. Defendants' statements are more than mere puffery: Defendants promote the pristine condition of their used cars to lure unsuspecting consumers into signing an "as is" purchase agreement of their vehicles with no contractual warranty. In the instant case, however, the Plaintiffs relied upon the Defendants representations and the Plaintiffs unequivocally communicated to the Defendants that the Aston Martin had to be accident-free as a condition precedent to their purchase. The Defendants repeatedly assured the Plaintiffs that the Aston Martin had not been damaged.

22. Defendants did not disclose to Plaintiffs that the Aston Martin had been purchased sight unseen from a general auto auction from Hollenshead Auto Sales in Lancaster, Pennsylvania, which is believed to be an affiliate company of Mannheim auto auctions. Defendants also did not disclose to the Plaintiffs that they were in possession of an auction report authored by Mannheim which contained an active weblink to the AutoCheck data base.

23. Defendants either knew and failed to disclose the true condition of the Aston Martin, or intentionally chose not to review the Aston Martin's accident history despite having access to such information. In either event, the Defendants chose to conceal the true market value of the Aston Martin, knowing that the condition of the Aston Martin was material to the Plaintiffs' decision to purchase. Further, the Defendants chose to conceal the accident history of the Aston Martin by offering it for sale at a price consistent with an undamaged Aston Martin, not one that has been damaged.

24. Defendants' concealment of the AutoCheck report constitutes a fraudulent misrepresentation of a material fact, and Defendants intentionally misrepresented the condition of the car to the Plaintiffs by stating that the Aston Martin had "no damage, a "clean Carfax", and that because

Select Luxury only sold "the best of the best" of hand picked, pristine cars, Defendants misrepresentations fraudulently induced the Plaintiffs into making a purchase.

25. As a result of Defendants misrepresentations, Plaintiffs have sustained damages.  Plaintiffs were lured into purchasing a car that is worth, at best, $30,000.00 less than the 121, 660.00 purchase price.  Plaintiffs have suffered emotional distress, mental anguish and out of pocket expenses as a result of the Defendants' tortious conduct.

26. That the Defendants' conduct was intentional, and made with willful and wanton disregard for Plaintiff's rights.  Therefore, punitive damages are warranted to deter defendant from like conduct in the future.

WHEREFORE, PLAINTIFFS demand judgment against the Defendants for its cause of action in an amount sufficient to compensate the Plaintiffs for the damages they have suffered, punitive damages in an amount sufficient to deter the defendants from like conduct in the future, as well as pre- and post-judgment interest, court costs, attorney's fees, and any other damages as this Court may find to be just and appropriate and as provided by law.

A JURY TRIAL IS HEREBY DEMANDED

Bettye Peige Willis-Rose
Michael J. Rose

_____
 By Counsel

John M. Loeschen
Loeschen Law Firm PLLC
30 East Clay St., #201
Salem, Va 24153
VSB 48996

Phone and Fax
877-645-0683
johnloeschen@yahoo.com

12